UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID MARK ERICKSON,

    Defendant.

2:12-CR-00001-LRH-PAL

ORDER

Before the court is defendant David Mark Erickson's Motion for a New Trial (#49[1]). The government has responded (#50).

## I.   Facts and Procedural History

On June 22, 2012, Defendant David Mark Erickson was convicted in a jury trial of one count of violating 18 U.S.C. § 2422(b). In relevant part, this section forbids individuals from knowingly attempting to "persuade, induce, entice, or coerce" a minor to engage in an illegal sexual act. Erickson has moved for a new trial on the basis of the government's misstatement of the law during closing arguments (to which defense counsel did not object).

In the afternoon of December 20, 2011, Detective Wayne Nichols of the Henderson, Nevada Police Department came across the following ad on Craigslist, an internet-based local classified ad service: "Are there any young girls that need help this season . . . I can help you . . .

---

[1] Refers to the court's docket entry number.

tell me about yourself and include a pic . . . help is this far away."[2] Detective Nichols replied over email, representing himself as a fourteen year-old girl and including a regressed image of a female law enforcement officer. The email exchange between Erickson and Nichols led to Erickson proposing a meeting that same night.

Erickson's first stated purpose for the meeting was to "do some shoppin," but Nichols responded that he was not "up for shopping" but "down for anything else, though . . . [b]ut if it's later I'll have to sneak out." After requesting another "cute, sexy pic," Erickson asked his correspondent when she wanted to "meet up." Nichols replied, "So if you pick me up, do you promise to get me home by 3:30 a.m. sharp?" Erickson asked his correspondent not to wear a bra when they met, and then Nichols broached sex by asking "Are you down to rock a condom?" After this, the conversation became overtly sexual, with Erickson describing his penis, asking his correspondent about her pubic hair, and declaring his intention to "make love" to her.

Shortly before the scheduled meeting time, Erickson asked his correspondent her age, and Nichols replied "14." Erickson responded, "I cant go out with you.. I thought you said other than that." After a twenty-minute silence from Erickson, Nichols wrote, "I guess im confused,,,did I make u mad or something?" And after a subsequent two-and-a-half-hour silence, Erickson asked his correspondent, "You really think it's a good idea to see me and you and I go out?"

The next day, Erickson rekindled the conversation and tried to arrange a meeting at a Vons grocery store at 10 a.m. Detective Nichols did not respond to Erickson's overtures because he could not assemble a response team fast enough. Erickson continued to exchange emails with Nichols after the failed meeting attempt, claiming he "want[s] to kiss" his correspondent and establishing that he no longer viewed her age as an obstacle. Nichols proposed a meeting the following morning, but Erickson wanted to meet that night. Once again, the meeting did not happen because

---

[2] When possible, quotes appear in the shorthand and internet vernacular in which they first appeared in text. Otherwise, the substance of the email exchange derives from Detective Nichols's testimony at trial. (Reporter's Transcript (#46), p. 38-113.)

2

Detective Nichols did not have enough personnel to apprehend Erickson safely.

The following morning, Nichols emailed Erickson asking, "Are we still meeting?" Erickson replied "yes," and proceeded to the same Vons. There, Detective Nichols's team arrested Erickson.

At trial, the court instructed the jury on the following elements of § 2422:

> First: Defendant used a facility of interstate commerce;
> Second: Defendant attempted to knowingly persuade, induce, entice, or coerce a 14 year-old girl into engaging in a sexual act for which he could be prosecuted under the laws of the State of Nevada;
> Third: Defendant believed that the person with whom he communicated was less than 18 years of age;
> Fourth: Defendant did something which was a substantial step toward committing the crime, with all of you agreeing as to what constituted the substantial step; and
> Fifth: Defendant acted knowingly and wilfully.

(Reporter's Transcript (#47) ("R.T."), p. 323-24.) Following these instructions, the government began its closing argument. In this argument, the prosecutor suggested to the jury a number of potential substantial steps:

> There are many substantial steps in this case. And you can choose any one of them. And I'll go through some of them for you.
> The defendant placed the ad on Craigslist looking for a young girl. The – when the girl responded and said she was 14, the defendant kept talking to her.
> The defendant talked to her about engaging in sex. He told her he wants to make love to her. He told her that he wants her to not wear a bra when they meet and to take her jacket off around him.
> He told her that he wanted to be her sugar daddy and explained the rules to her. And those rules included holding hands and kissing, and that sort of thing.
> He asked her to meet. He showed up at the meeting place on more than one occasion. . . . Because what he had to do was he had to use the Internet to attempt to engage – to knowingly persuade, induce, entice, or coerce the minor, to attempt to do that. . . .
> So his crime was complete before he ever showed up.

(R.T. at 331-32.) Though defense counsel did not object at that time, he brought his objections to the court's attention the following day, during the government's reply argument. At a sidebar conference, the court responded, "It's not a substantial step to just – under the evidence in this case, just to communicate on the Internet as this defendant did." (R.T. at 395.) The court then addressed the jury: "[I]n following my instructions, you must follow all of them and not single out some and ignore others, or single out certain parts or ignore other parts. They are all equally important." (R.T. at 396.)

3

Erickson now moves for a new trial based on "the government's flawed theory on what constituted a substantial step." (Defendant's Motion for a New Trial (#49), p. 15:28.)

## II. Discussion

The court must first discern whether the government misstated the law in its closing argument. If so, the court must determine the legal effect of this misstatement on a motion for a new trial.

### A. A "substantial step" for the purposes of a § 2422 conviction

The court properly instructed the jury on the elements of an attempted § 2422 offense. In particular, an attempt conviction requires "evidence that the defendant intended to violate the statute and took a substantial step toward completing the violation." *United States v. Goetzke*, 494 F.3d 1231, 1235 (9th Cir. 2007).[3] A substantial step must go "beyond mere preparation, and must corroborate strongly the firmness of the defendant's criminal intent." *United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010).

In stings like the one conducted by Detective Nichols, a defendant's travel to the meeting location is usually a sufficient substantial step. *See id*. at 1175 (defendant travels to prearranged meeting place); *United States v. Brand*, 467 F.3d 179, 204 (2d Cir. 2006) (same); *United States v. Coté*, 504 F.3d 682, 688 (7th Cir. 2007) (same); *United States v. Spurlock*, 495 F.3d 1011, 1012-13 (8th Cir. 2007) (same); *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006) (same). Similarly, arranging a meeting location, buying nonrefundable bus tickets, or making hotel reservations may constitute substantial steps. *See United States v. Gladish*, 536 F.3d 646, 649 (7th Cir. 2008) (collecting cases); *see also United States v. Thomas*, 410 F.3d 1235, 1245-46 (10th Cir. 2005) (arranging meeting constitutes substantial step). However, where a defendant's

---

[3] The parties also discuss the required intent for an attempt conviction under § 2422. In the Ninth Circuit, this is an intent to "*persuade, induce, entice, or coerce* a minor to engage in sexual activity [rather than an intent] to *engage* in sexual activity with the minor." *United States v. Hofus*, 598 F.3d 1171, 1178 (9th Cir. 2012) (citing cases). Since the type of intent involved does not ground the Motion for a New Trial, the court does not address it.

4

interaction with his victim is restricted to "idle chatter" over the internet, the Seventh Circuit in *Gladish* concluded that there is no substantial step. *Id*. at 650.

The *Gladish* court distinguished the Ninth Circuit's opinion in *Goetzke*. In *Goetzke*, the defendant met his ten year-old victim on a Montana ranch, where the defendant worked. After the victim returned to his home in Louisiana, the defendant sent several letters expressing the defendant's desire to see the victim naked and to perform oral sex on him. The defendant offered gifts to entice the victim back to Montana, and he proposed that the victim return to the ranch the following summer. The defendant also called the victim's home. "In short, [the defendant] made his move." *Goetzke*, 494 F.3d at 1235, 37. Distinguishing *Goetzke*, the *Gladish* court noted, "Because Goetzke and his intended victim had a prior relationship, his effort to lure the victim back to Montana for sex could not be thought idle chatter." *Gladish*, 536 F.3d at 650. In addition, the *Gladish* court observed, "Treating speech (even obscene speech) as the 'substantial step' would abolish any requirement of a substantial step." *Id*. And the requirement of proving a substantial step "serves to distinguish people who pose real threats from those who are all hot air." *Id*.

Here, the government incorrectly identified several substantial steps. First, the defendant did not cross the line from "mere preparation" into attempt when he "posted the ad on Craigslist looking for a young girl," nor when the girl responded and "the defendant kept talking to her." (R.T. at 331.) These acts fall short of "describ[ing] sexual acts that [the defendant] would like to perform on the minor, and propos[ing] a rendezvous to perform those acts"–predicate events that even the *Goetzke* court identified as necessary to find a substantial step. *See Goetzke* 494 F.3d at 1237. Indeed, Erickson's sexually charged conversation fails to ripen into a substantial step without the presumption of an impending meeting. *Id*. Once Erickson proposed a meeting in sufficiently concrete terms,[4] however–and this happened fairly early in the email exchange–Erickson's conduct

---

[4] These terms typically include the identification of a time and a place. *See Gladish*, 536 F.3d at 649 (collecting cases).

5

graduated from "idle chatter" to substantial step. Therefore, while the government did misstate the law, it correctly concluded that "his crime was complete before he ever showed up." (R.T. at 332.)

### B. The Rule 33 standard for a new trial

The effect of the government's misstatement in its closing argument depends on the standard for granting a Rule 33 motion for a new trial. Rule 33 of the Federal Rules of Criminal Procedure provides that a court may grant the defendant's motion for a new trial "if the interest of justice so requires." A motion for a new trial is "directed to the discretion of the district judge." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981). For example, if the court concludes that the evidence is sufficient to sustain the verdict but a serious miscarriage of justice may have occurred, the court may grant the motion for a new trial. *See United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). On a motion for a new trial, the court is free to weigh the evidence and evaluate for itself the credibility of the witnesses. *Id*.

In determining whether to grant a new trial, some district courts have adopted the plain error standard of review, Fed. R. Crim. Pro. 52(b), reasoning that the new-trial determination places the court in an appellate role. *See United States v. Yevakpor*, 501 F. Supp. 2d 330, 334 (N.D.N.Y. 2006) (collecting cases); *see also United States v. Del Toro-Barboza*, 673 F.3d 1136, 1150 (9th Cir. 2012) (reciting the appellate standard that "[a] criminal conviction will not be overturned on the basis of a prosecutor's comments unless in context they affected the fundamental fairness of the trial"). The plain error standard is demanding:

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, *i.e.,* affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, if the above three prongs are satisfied, the court . . . has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (quotations and citations omitted). Even where courts have not adopted the plain error analysis, they have erected a high bar to the motion for a

6

new trial. *See, e.g., United States v. Carpenter*, 808 F. Supp. 2d 366, 380 (D. Mass. 2011) (determining whether the prosecutor's improper argument so "poisoned the well" that the trial's outcome was adversely effected).

Upon appellate review, misstatements of the law during closing arguments may be "plain error" when they improperly shift the burden of proof to the defendant. *See United States v. Sandoval-Gonzalez*, 642 F.3d 717, 726-27 (9th Cir. 2012) (finding the prosecution's burden-shifting with respect to citizenship was error under a tougher "harmless error" standard); *United States v. Segna*, 555 F.2d 226, 230-32 (9th Cir. 1977) (finding error where the prosecutor shifted the burden of proving sanity onto the defendant). However, absent burden-shifting, a prosecutor's legal misstatements usually do not merit a new trial–at least not where the jury received proper instructions and there was no "supervening constitutional error." *Del Toro-Barboza*, 673 F.3d at 1152. In *United States v. Chong Lam*, for instance, the district court denied a motion for a new trial even though it found both that the government misstated the law during argument and that these misstatements were prejudicial to the defendant. 677 F.3d 190, 203 (4th Cir. 2012). After considering factors like the extent of the improper remarks, their tendency to mislead the jury, the weight of the evidence against the defendant, and whether the misdirection was purposeful, the court noted that proper instructions before the misstatement, coupled with a curative post-misstatement instruction, ensured a fair trial. *See id*. at 204 (describing the holding of the district court, in which the court observed that "juries are presumed to follow their instructions," *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

As in *Chong Lam*, the court here cured any injustice created by the prosecutor's misstatement of the law. First, the extent of the prejudice created by the government's misstatements was minimal. Under *Goetzke*, Erickson's sexual comments crossed the line from "hot air" to substantial step after Erickson proposed a time and a place to meet. *See* 494 F.3d at 1237. As discussed above, this happened early on in the email exchange. Therefore, the majority of Erickson's incriminating comments occurred against the backdrop of an anticipated meeting,

7

"corroborat[ing] strongly the firmness of [Erickson's] criminal intent." *Hofus*, 598 F.3d at 1174. Furthermore, copious evidence supported the substantial step element–Erickson traveled to meet his victim. *See id*. at 1175. The court credits the government's argument that "[i]t is unthinkable that a jury, when presented with a clear instance of a very substantial step (traveling to meet a minor), would unanimously choose the most minor step (placing an ad on Craigslist) to satisfy the element." (Response to Defendant's Motion for a New Trial (#50), p. 13:14-15.) The court also credits the government's claim that its misstatement was made in good faith.

Finally, the court timely administered the proper antidote. The court delivered the correct instructions before the government's misstatements. And it directed the jury to follow the court's instructions–and not the parties'–after the government's misstatements. The court's admonition to the jury that it was not to "ignore" parts of the court's earlier instructions challenged the government's claim that "[Erickson's] crime was complete before he ever showed up"–that is, the jury was not to ignore the necessity of finding a substantial step. Yet this instruction drew the line between preparatory and substantial steps in a way favorable to the defense: a jury properly following this admonition would convict only after concluding that Erickson's travel to Vons constituted a substantial step. Since the defense does not advance, and the court does not detect, any constitutional error that "supervenes" on the government's misstatement of the law, the court's curative instruction disposes of any prejudice to Erickson. *Del Toro-Barboza*, 673 F.3d at 1152. Therefore, under no Rule 33 standard is a new trial appropriate.

IT IS THEREFORE ORDERED that Defendant's Motion for a New Trial (#49) is DENIED.

IT IS SO ORDERED.

DATED this 18th day of September, 2012.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE